UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHNNY LEE MULKEY, III,

              Petitioner,

v.

NIAGARA COUNTY SHERIFF,

              Respondent.
_____

**DECISION AND ORDER**

1:20-CV-01145 EAW

## I.    INTRODUCTION

*Pro se* petitioner Johnny Lee Mulkey ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). Petitioner challenges the April 10, 2020 decision of Acting Supreme Court Justice Richard C. Kloch, Sr., of New York State Supreme Court, Niagara County denying his request for release on bail pending trial. (*Id.* at 1).[1] For the reasons below, the request for a writ of habeas corpus is dismissed as moot.

## II.    BACKGROUND

### A.    State Court Proceedings

Petitioner was arraigned in Niagara Falls City Court on June 30, 2019, on one count of first-degree reckless endangerment and one count of second-degree criminal possession of a weapon; the charges stemmed from a June 8, 2019 shooting at Player's Bar. (Dkt. 5-1 at 1). Petitioner posted bail and was released. (*Id.*). On October 25, 2019, a Niagara

---

[1]    Page citations to all pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

County grand jury returned indictment 2019-307 charging him with first-degree reckless endangerment and second-degree criminal possession of a weapon in connection with the June 2019 shooting. (*Id.* at 1, 5-6).

Petitioner appeared before Acting Supreme Court Justice Richard C. Kloch, Sr., of New York State Supreme Court, Niagara County ("trial court") on October 30, 2019, for arraignment on indictment 2019-307. (*Id.* at 2, 10). He was released on bail previously posted. (*Id.* at 2, 10).

On November 26, 2019, the prosecution requested that the trial court reconsider Petitioner's bail status because he had three active bench warrants from Lewiston Town Court, Hartland Town Court, and Niagara Falls City Court. (*Id.* at 2, 14). The trial court denied the prosecution's request and scheduled the next appearance for December 10, 2019. (*Id.* at 2, 15). Petitioner remained released on bail previously posted. (*Id.* at 2, 15-16).

Neither Petitioner nor his attorney appeared on December 10, 2019. (*Id.* at 2, 19). The trial court issued a bench warrant. (*Id.* at 2, 21).

On December 18, 2019, Petitioner appeared with his attorney. (*Id.* at 2, 22). The trial court declined the prosecutor's request to increase the bail amount, despite Petitioner's failure to appear on December 10, 2019, in reliance on his attorney's explanation for his missed appearance. (*Id.* at 2, 24-25). Petitioner remained released on bail previously posted. (*Id.* at 2, 30-31).

Petitioner was arrested on a new felony charge on January 29, 2020, in connection with his alleged possession of a rental car stolen from Hertz Car Rental. (*Id.* at 2).

On February 3, 2020, the prosecution requested a bail increase in light of the new felony charge and two additional bench warrants issued by Hartland and Pendleton Town Courts. (*Id.* at 2, 37-38). The trial court denied the prosecution's request at that time, citing the need for a bail hearing in order to afford Petitioner due process. (*Id.* at 2, 38-39). A hearing was scheduled for March 5, 2020, to address the bail issue and the suppression of Petitioner's statements to police. (*Id.* at 36).

On February 21, 2020, a Niagara County grand jury returned indictment 2020-040 charging Petitioner with third-degree criminal possession of stolen property in connection with the theft of the Hertz rental car. (*Id.* at 2, 41).

On March 5, 2020, Petitioner appeared for arraignment on indictment 2020-040 and a bail hearing. (*Id.* at 2). Because he had obtained new counsel, the hearings were adjourned to March 12, 2020. (*Id.*).

On March 12, 2020, Petitioner appeared with his attorney for the bail hearing. (*Id.* at 2, 44, 50). At the prosecution's request, the trial court took a recess to review the grand jury minutes related to indictment 2020-040. (*Id.* at 51-53). When the proceeding reconvened, the trial court determined that the grand jury "clearly and convincingly indicate[d]" that Petitioner was driving a stolen vehicle and thus had committed another felony while out on bail. (*Id.* at 54; *see also id.* at 55). The trial court found that under New York Criminal Procedure Law ("C.P.L.") § 530.60, there was a basis to modify the securing order and remanded Petitioner. (*Id.* at 54-55, 56). The suppression hearing was adjourned. (*Id.* at 55).

On April 3, 2020, through his attorney, Petitioner moved for reinstatement of the bail he previously posted, citing health concerns at the jail due to the COVID-19 pandemic. (*Id.* at 3, 62-77). The prosecution opposed Petitioner's release. (*Id.* at 3, 79-82). On April 10, 2020, the trial court issued an order via email denying reconsideration of the prior bail determination. (*Id.* at 84). In particular, the trial court noted that no showing had been made that Petitioner faced any individualized threat to his health or safety by being incarcerated at the Niagara County Jail. (*Id.*). The trial court also found that in light of the many charges against Petitioner, it was safer for the community and law enforcement personnel for him to remain in custody. (*Id.*).

As of September 29, 2020, when Respondent answered the petition, another pretrial appearance in connection with indictment 2020-040 was scheduled for October 16, 2020. (*Id.* at 3). According to Respondent, the matter then would be ready for trial. (*Id.*).

Petitioner was admitted to Gouverneur Correctional Facility on October 7, 2021. *See* Incarcerated Lookup, New York State Department of Corrections and Community Supervision.[2] He is incarcerated as a result of convictions for two counts of attempted second-degree criminal possession of a weapon and one count of third-degree criminal possession of stolen property.[3] *Id.* He is serving an aggregate minimum sentence of five years, one month, and 18 days; and an aggregate maximum sentence of six years. *Id.*

---

[2]  *Available at* https://nysdoccslookup.doccs.ny.gov/ (search for DIN 21B1669) (last accessed Mar. 6, 2024).

[3]  There are no reported decisions on electronic databases indicating that Petitioner appealed these convictions.

### B.   Federal Habeas Petition

Petitioner filed the petition on April 16, 2020, while he was detained at the Niagara County Jail. (Dkt. 1 at 12). He asserts that his pretrial detention violated due process because law enforcement officials falsified the charge based on his alleged possession of a stolen rental car. (*Id.* at 6-7). He has submitted a notarized statement from Evelyn Jenkins ("Jenkins") dated May 28, 2020, stating that she did not want to press charges against Petitioner, that the police officer falsified the stolen car report, and that her name was not on the rental car agreement. (*Id.* at 9). Petitioner claims that the revocation of his bail was based on an uncharged, unindicted claim of possession of property stolen from Jenkins. (*Id.* at 6). Petitioner also asserts that the risk of contracting COVID-19 while detained at the Niagara County Jail violates his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at 8, 10).

Respondent filed a memorandum of law in opposition to the petition (Dkt. 5) and an affidavit attaching the relevant state court records (Dkt. 5-1). Respondent argues that Petitioner failed to exhaust his state remedies pursuant to 28 U.S.C. § 2254(b). (Dkt. 5 at 1-3). Respondent also contends that Petitioner failed to identify a violation of federal law in connection with the trial court's denial of bail. (*Id.* at 3-4). Respondent notes that the felony charges in indictment 2020-040, which the trial court considered in deciding to remand Petitioner, were wholly unrelated to any incident involving Jenkins. (*Id.* at 3; Dkt. 5-1 at 2). Respondent asserts that Petitioner failed to show that Jenkins' affidavit was relevant to the bail determination. Petitioner did not file a reply.

### III. <u>JURISDICTION</u>

#### A. **Proper Characterization of the Petition**

The Court's first task is to determine the proper jurisdictional framework for analyzing the petition, which was brought by Petitioner while he was a pretrial detainee. A federal court has jurisdiction to grant a writ of habeas corpus "to a prisoner [who] . . . is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2254, which specifically refers to petitioners in state custody, provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to *the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis supplied).

"The issue of whether a petition for a pretrial writ of habeas corpus is properly brought pursuant to [28 U.S.C.] § 2241 or § 2254 has never been squarely addressed by the Second Circuit, and indeed the Second Circuit appears to have considered such petitions under both such statutes." *Hoffler v. Bezio*, 831 F. Supp. 2d 570, 575 (N.D.N.Y. 2011) (collecting cases), *aff'd*, 726 F.3d 144 (2d Cir. 2013). "In at least one case, the Second Circuit has recognized that § 2241 is available to state pre-trial detainees." *Marte v. Berkman*, No. 11 CIV. 6082 JFK, 2011 WL 4946708, at *5 (S.D.N.Y. Oct. 18, 2011) (citing *United States ex rel. Scranton v. New York*, 532 F.2d 292, 293 (2d Cir. 1976) (treating pretrial application to bar state court retrial following a mistrial on speedy trial grounds as a § 2241 petition)), *aff'd on other grounds sub nom. Marte v. Vance*, 480 F. App'x 83 (2d Cir. 2012). "[I]n factually analogous cases where there is no judgment of

conviction, numerous other courts [outside the Second Circuit] have construed state pre[]trial habeas petitions as applications arising under the general habeas statute." *Id.* (collecting case).

The district courts in this Circuit have concluded uniformly that § 2254(a) applies only to those whose state custody results from a final judgment issued by a state court, and therefore petitions brought prior to trial are properly construed under § 2241 rather than § 2254. *See*, *e.g.*, *Robinson v. Sposato*, No. CV-11-0191 SJF, 2012 WL 1965631, at *2 (E.D.N.Y. May 29, 2012) (petition brought by petitioner detained after being arrested for violating his parole); *Hoffler*, 831 F. Supp. 2d at 575 (petition brought by detained petitioner awaiting retrial), *aff'd on other grounds*, 726 F.3d 144 (2d Cir. 2013); *Marte*, 2011 WL 4946708, at *5 (same). The Court finds the reasoning of these decisions persuasive and will treat Petitioner's petition, although styled as an application under § 2254, as an application under § 2241.

The Court notes that the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), imposed gatekeeping limitations on second or successive § 2254 and § 2255 petitions. *See* 28 U.S.C. §§ 2244(b), 2255(h). "AEDPA applies to petitions brought under the post-conviction remedy statutes, 28 U.S.C. §§ 2254 and 2255, but not to petitions brought under the traditional habeas statute, 28 U.S.C. § 2241." *James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002). As this action challenges Petitioner's pretrial detention in his then-pending criminal proceedings, it is not a postconviction action or motion implicating the AEDPA's gatekeeping requirements. Therefore, there is no need to obtain Petitioner's consent before recharacterizing the

petition as an application pursuant to § 2241. *Burns v. Valhalla*, No. 23-CV-6440 (LTS), 2023 WL 7301394, at *2 n.2 (S.D.N.Y. Nov. 6, 2023).

    **B.**    **Mootness and Justiciability**

Article III, § 2 of the United States Constitution limits this Court's subject matter jurisdiction to matters presenting an actual case or controversy. *See Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) ("Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). If the issues presented by the case "are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome,'" the case is moot, thereby depriving the court of jurisdiction to hear it. *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). "The parties must continue to have a personal stake in the outcome of the lawsuit." *Id.* (quoting *Lewis*, 494 U.S. at 478). "This means that, throughout the litigation, the [petitioner] 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Lewis*, 494 U.S. at 477).

In habeas proceedings, "mootness is not fixed at the time of filing but must be considered at every stage" of the proceeding. *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016). If the petitioner has been released from custody during the pendency of the case, the petition is deemed moot unless he can show a "concrete and continuing injury

other than the now-ended incarceration," such as an ongoing "collateral consequence" of his prior detention or conviction. *Spencer*, 523 U.S. at 7.

When the petitioner is challenging a criminal conviction, the Court may presume that cognizable collateral consequences flow from the conviction. *See Sibron v. New York*, 392 U.S. 40, 55 (1968) (acknowledging, in the context of a direct appeal, the "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences," ranging from deportation to sentencing enhancements in the event of future convictions); *Nowakowski*, 835 F.3d at 222, 226 (holding that a criminal conviction for a "violation" under New York's Penal Law qualifies for the *Sibron* presumption even though state legislature chose not to characterize "violations" as "crimes," because it "subjects [the petitioner] to the possibility of impeachment in a future criminal proceeding and thus presents a sufficient continuing collateral consequence to satisfy the requirements of a live case or controversy").

No similar presumption exists where the petitioner "does not challenge a criminal conviction." *Nowakowski*, 835 F.3d at 218; *see also Spencer*, 523 U.S. at 9-13 (declining to extend the presumption of continuing collateral consequences to parole violations); *United States v. Mercurris*, 192 F.3d 290, 294 (2d Cir. 1999) (declining to presume sufficient collateral consequences where habeas petitioner challenged a sentencing enhancement).

Here, Petitioner does not challenge a criminal conviction. Indeed, when he filed the petition, he had not yet been tried on any criminal charges. Instead, Petitioner challenges the denial of release on bail while he awaited trial. However, Petitioner is no longer

detained pursuant to the trial court's April 10, 2020 order denying him release on bail. His custodial status is based on his subsequent criminal convictions, which he does not challenge in this petition. Because Petitioner cannot show an ongoing "collateral consequence" of his prior detention or conviction, *see Spencer*, 523 U.S. at 7, the due process claim based on the bail denial does not present a justiciable case or controversy.

The Court turns next to the other claim in the petition, which raises an Eighth Amendment challenge to the conditions of Petitioner's confinement at the Niagara County Jail due to the COVID-19 pandemic. Petitioner is no longer detained at that facility, having been transferred to Gouverneur Correctional Facility after his criminal judgment. As the only relief Petitioner seeks in the petition was release from Niagara County Jail, his Eighth Amendment claim no longer presents a justiciable case or controversy. Accordingly, the petition contains only moot claims, and the Court no longer has subject matter jurisdiction over it. The petition therefore is dismissed without prejudice.

## IV. CONCLUSION

For the reasons above, the petition (Dkt. 1) is converted from an application under 28 U.S.C. § 2254 to an application under § 2241. Because the matter no longer presents a live case or controversy, the petition is moot, and the Court lacks subject matter jurisdiction to hear it. Accordingly, the petition is dismissed without prejudice. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(1) because Petitioner has failed to make "a substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2). The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 12, 2024
            Rochester, New York